UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      -v-

MICHAEL LANE,

               Defendant.

No. 09 Cr. 441 (RJS)

<u>ORDER</u>

<u>RICHARD J. SULLIVAN</u>, Circuit Judge:

       The Court is in receipt of the attached motion from defendant Michael Lane, requesting that the Court terminate his remaining term of supervised release, which is otherwise set to expire on July 18, 2024.[1]  IT IS HEREBY ORDERED THAT the government shall respond to Lane's motion no later than Thursday, May 19, 2022.

SO ORDERED.

Dated:       May 12, 2022
              New York, New York

                                    RICHARD J. SULLIVAN
                                    UNITED STATES CIRCUIT JUDGE
                                    Sitting by Designation

---

[1] Attached to the motion are letters from Lane's family and friends.  Having found that the privacy interests of these third parties outweigh the presumption in favor of open records, *see United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995), the Court has redacted the letters to remove personal addresses.

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

United States of America                                                    Case No.:  1:09-cr-00441-RJS
            Plaintiff,

v

Michael Lane

            Defendant.


MOTION TO TERMINATE SUPERVISED RELESE

PURSUANT TO 18 U.S.C. 3583(E) (1)


I.        Introduction

        COMES NOW, Michael Lane, requesting that this Honorable Court terminate his supervised release early, pursuant to 18 U.S.C. 3583 (e) (1).

II.       Background

        Defendant was arrested in March 2009, and pleaded guilty to violations of 18 U.S.C. 2422 (b) and 18 U.S.C. 2423 (b).  In April of 2011, he was sentenced to 144 months of imprisonment, followed by 5 years of Supervised Release.

Defendant moved the location of his supervised release to the Middle District of Florida in 2019.

Defendant currently resides in the Middle District of Florida with his sister and brother-in-law.

Jurisdiction of the case remains in the Southern District of New York.

Since the inception of his Supervised Release, Mr. Lane has remained 100% in compliance with all requirements imposed by this Court.  In spite of the Covid-19 pandemic, Mr. Lane found, and has maintained, steady employment.  Mr. Lane has participated fully in the required treatment imposed by this Court, and has had no issues with either the treatment provider or his Probation Officer.

In spite of the challenges that a convicted felon and registered offender face, Mr. Lane has thrived in Palm

1

Bay.  In addition to maintaining steady employment, Mr. Lane is pursuing woodworking in his spare time,

hoping to turn the hobby into an income generating business.  Recently, Mr. Lane exhibited

extraordinary conduct when he rendered life-saving CPR to a neighbor who stopped breathing.  Mr. Lane

began CPR training earlier in his life, and administered CPR to his neighbor until local medical authorities

arrived.

III.    DISCUSSION

A court may "terminate a term of supervised release and discharge the defendant at any time

after the expiration of one year of supervised release" after considering certain sentencing factors

outlined in 18 U.S.C. 3553 (a).  Those factors ask the Court to consider general punishment issues such as

deterrence, public safety, rehabilitation, proportionality and consistency.    (U.S.  v   Lussier  104F3d (2d

Cr, 1997).    Thus, supervised release is "… not, fundamentally, part of the punishment, rather, its focus

is on rehabilitation".    (U.S.  v  Aldeed,  792F.3d 247, 252  (2d Cir 2015).

Further, to terminate a term of supervised release, a court must conclude that the

termination is warranted by 1.  The conduct of the defendant, released, and  2,  the interest of justice.

18 U.S.C. 3583 (e) (1).  Exceptionally good behavior or a change in the defendant's circumstances may

render the "previously imposed of release" either too harsh or inappropriately tailored to serve the

general punishment goals of 3553 (a)".  See U.S.  v   Jimenez. No.  92 Cr. 9(RJD), 2021 U.S. Dist Lexis

27840, 2021  WL  535208, at *1(EDNY Feb 12, 2021)  II(quoting Lussier, 104F.3d at 36);  see also U.S.   v

Sam, No.  16 Cr.  184  (JGK),  2018 U.S. Dist LEXIS  23454,  2018 WL 836055, at *1(SDNY Feb 12,   2018).

Those circumstances previous described "are not a limit on a District Court's statutorily granted authority

to terminate" a term of supervised release.    U.S.  v  Trotter, 321 F. Supp 3d 337,  359-60  (EDNY 2018);

see also Erskine, 2021 U.A. Dist LEXIS 42640,  2021 WL 861270, at   *2(quoting U.S.  v  Harris, 689 F.  Supp

2d 692,  694 SDNY 2010).

Mr. Lane has been in full compliance with the terms of his supervision, without incident or

2

infraction.  He is currently employed at Xtreme Aquatic Foods, where he has been employed since April of 2021.  Mr. Lane's Supervisor has provided a letter of recommendation.   The challenges of being on a registry and the COVID-19 pandemic are great, but Mr. Lane's determination to become a productive member of society, has driven him.    He has reintegrated into his community safely and appropriately.

        In making a decision to terminate supervised release, Mr.  Lane understands that this Court must consider public safety.  Mr. Lane is currently on the Sex Offender Registry for the State of Florida, a fact that will not change with the termination of supervised release.  The registry provides a public notification of Mr. Lane residence, and maintains accurate records of his employment and vehicles he drives.  In addition, Mr. Lane must maintain compliance with State and Local laws which limit where he can reside and recreate; this is required by any municipality within Florida and Mr. Lane has had no issues whatsoever knowing and following these strict laws.  Full compliance with these laws maintains public safety, and public safety is not diminished by terminating supervised release at this time.

        Michael Lane has accepted full responsibility for his actions that led to his incarceration.  He has worked diligently to rehabilitate his family relations and make amends to those he has affected. Terminating supervised release at this time will allow him to move forward with his life in a manner appropriate to someone in his position.    It is his sincere prayer that this Court agrees.

April 5, 2022

Michael Lane

Dear Honorable Judge Sullivan,

I came before your court in April 2011 for sentencing on two sexual offense counts. I pled guilty to both counts, took full responsibility and accountability for my actions. As I said in my statement to the court I deserved to go to prison and to this day I still believe that statement.

I served 10 years 109 days without any disciplinary action. I worked the majority of the time I was incarcerated and also received a Certificate in Quality Control from the American Society of Quality a self-study program offered by UNICOR while I worked there.

I will have been on Supervised Release for three year this July. I have successfully met all the requirements of my supervision. I've been proactive in my therapy group from my first session. But these are the things I am suppose too do and have done them willingly and look forward to my therapy sessions because they have helped me and have allowed me to help the others in my group.

During the Covid-19 lockdown, we had individual one hour therapy session twice a month which I believe were a blessing. During that year working with Dr. Susan Sullivan, I was able to focus on me and open up and learn that the self-destructive path that leaded to my offense can never be justified by anyone, especially me. I understand that the harm brought to any child or adult person that is sexually abused can never be undone, and there is more then one victim. The entire family of the victim suffers for a lifetime just as the victim does. The family must feel that they didn't protect their child. I'm sure that every time that a child has a nightmare of what happened, or suffers some setback in life because of what happened, it must also take its toll on the parents, brothers and sisters of the victim. I am truly sorry for my actions.

I also said in my statement to the court that I would not let this horrible crime that I committed define the rest of my life, although I have to live with the consequences forever and that I fully accept. In the enclosed letters from my sister, friends and two employers that offered a position to me, I believe you will see the true person I am today and the person I was before my self-destruction.

I would like to once again apologize to you, the State of New York and the victims of sexual abuse for my actions.

Sincerely and respectfully,

Michael Lane

February 28, 2002

Dear Honorable Judge Sullivan,

My name is Ronald Norman and I am writing this letter for Mr. Michael Lane who lives on the same cross street as me.

On January 29, 2022, I overdosed on heroin. Mr. Lane came to my aid. He took control of the situation as soon as he learned what was happening without being asked and performed CPR on me and played a major role in saving my life.

I can say that Mr. Lane is well liked and respected in our neighborhood.

Thank you for taking this letter into consideration on behalf of his character and his positive involvement in our community.

Respectfully,

Ronald Norman

March 14, 2022

Dear Honorable Judge Sullivan,

This letter is written for my brother, Michael Lane, who came before you in April 2011 for sentencing of a sexual offence and received 144 months with 5 year's supervised release.  Never once did Michael complain about his sentencing, he often said that what he did was wrong and that he deserved to be in prison for what he had done.  He has always taken for responsibility for his actions.  Michael completed his time in prison on July 19, 2019 without any disciplinary actions, he was a model inmate.

Michael also started playing guitar again, formed a Blues band and shared his love of music and performing with the other inmates to help ease the difficulties of being incarcerated.  He also taught himself to draw, earn a Certificate, In Quality Control from the American Society of Quality, a self- study course offered by Unicor while he worked there.

Since his release, Michael has met all the conditions of his supervised release with success.  Mr. Bryce Hartgrave his parole supervisor, has praised Michael for his growth and proactive approach to a successful reentry into our community.  Michael also is very active in his therapy group and again never complains about his obligation of going weekly.

All the things mentioned above are the things that are expected of someone on supervised released.  Now I would like to tell you about the things that Michael has done above and beyond what most people in our society and community don't do.

The first thing he did was within the first three months of being released, Michael was buying some used woodworking equipment from a woman (Laurie Samra).  Laurie's boyfriend was dying from COPD.  My brother was so taken by the situation that Laurie was in, he took it upon himself to help her in anyway that he could.  For the next 15 days after meeting Laurie, Michael helped her sell off anything of value, he helped pack her belongings for her move to Tennessee to be with her brother and even sold some items for her once she left and sent the money to her as he said he would.   The empathy and kindness he extended to a total stranger was extraordinary and unmatched in my opinion.  Terry Snider pass away 10 days after Michael first visit to their home.  Michael and my husband also attended Terry's funeral out of respect.

The next thing was on his way home from his first group therapy session with Dr. Susan Sullivan.  While driving home the car in front of him crossed over into oncoming traffic, just missing hitting a car and crashed in a small wooded area off the road.  The driver then continued to drive off the side of the road until he hit a ditch and his car finally came to rest.  Michael was first on the scene, to find a gentleman in his late 20's or early 30's unresponsive in the car.  The car was locked, the gentleman eyes were rolled back and he was foaming from the mouth and started to convulse.  Michael did not have a phone but immediately asked someone who stopped on the other side of the road to call 911.  When the first responders arrived, they broke a window and provided first aid to the gentleman.  It took several shots of Narcan to revive the gentleman but he survived his overdose because of Michael actions.

Finally, and just recently Michael saved the life of Ronald Norman.  Ronald had a problem with Michael living in the neighbor because of his charges.  He harassed Michael three or four times over the last 3

years, which Michael informed Bryce Hartgrave (his P.O.) and Dr. Sullivan each time.  On or about January 29, 2022, Ronald overdosed on heroin.  Michael on his way home for having the oil changed in the truck, saw my Husband, Phil Defranco in the front yard of Ronald house.  Knowing it was odd that Phil was there, Michael stopped and asked what was going on.  Phil informed him that Ronald was in the house not breathing and that the landlord was in the house with him.  Michael parked his truck and immediately went to assist the landlord.  Michael announced that he was entering the house, the landlord responded he needed help and that Ronald was turning blue.  Michael was certified in CPR when he was younger.  Michael immediately started CPR until the first responders arrived and Ronald Norman is alive and well today because of my brother's actions.  Michael disregarded how Ronald treated both my husband and himself and did the right thing at the right to save another human being that despise him because of his charges.  Since this happened Mr. Norman has apologized for how he has treated Michael and my husband.  He also thanked Michael and my husband for saving his life, allowing his children to have a father in their life.

In all three of these events, Michael's actions did not surprise me.  Michael has always believed in doing the right things to help others in need.  Yes, Michael did do something very wrong and has done all that has been asked of him with without excuses or blaming anyone or anything for those actions but himself.

I believe that Michael was always a good person.  I think his time in prison was warranted and that Michael has demonstrated that he is still caring, compassionate and has empathy for those he may come in contact with but also has empathy for those who suffer from the type of crime he committed.


Thank you for taking the time to read this letter on behalf of my brother, Michael Lane.



Sincerely,

Mrs. Patricia Defranco

December 10, 2021

Mr. Daniel Snider
Mrs. Linda Snider

Dear Madam or Sir,

We are writing on the behalf of Michael Lane.

We met Michael during a family crisis, our brother was deathly ill and his girlfriend was preparing for his death. Michael was just out of prison 3 months at this time. Michael was a stranger who purchased some woodworking equipment from her as she was preparing to move when the time came. Michael was so taken by her situation that he took it upon himself to do whatever he could to ease her burden. Michael saw that she was overwhelmed and in dire need of help and support.

Michael, a total stranger, for the next 10 days did everything possible for her. He sorted through the garage and house, selling anything of value, he delivered furniture to people who needed help, he packed her belongings and put them in storage only to have to repack the moving trucks a week later. Michael even attended our brother's funeral. A total stranger who had the compassion and empathy for someone he just met. We believe that speaks volumes of his character and the person he truly is.

Since then, we have become good friends and consider him part of our family. Our son and Michael have also developed a friendship over similar interests of drag racing, motorcycles and call each other brother. We have also introduced Michael to some of our friends and neighbors and they all speak highly of him.

Michael was open with us about his time in prison. We have seen Michael in several social situation and his manners, respect, and thoughtfulness of others is paramount. We believe that Michael is fully aware of his surrounding at all time and avoids anything that is questionable in regards to his restrictions.

He has helped us with some remodeling of our home, yard work that we were unable to do, his work is impeccable and his work ethic is unmatched. We have complete trust in Michael, we have left him alone in our home while he was working to run errands and have never done that with anyone else. We always look forward to Michaels positive attitude.

We believe that Michael has made the positive changes that are expected of him. We know that Michael is a productive and positive person and we fully support him.

Thank you for your time and consideration of Michael request to terminate his supervised released.

Respectfully,

*Linda Snider*

Daniel & Linda Snider

*Dannys C. Snider*

Dear Mr. Bryce  Hartgrave:

I am writing to share with you an experience I had, and have with Mr. Mike Lane. Previous conviction of  a sexual encounter with a mother and an underage teenager.

Mike came to a yard sale I was having.  I told him my story, which is a long one; I was caring for my significant other, who had emphysema, and has since passed away. I desperately needed to sell my possessions and move.

Mike saw my predicament and assisted me. He showed up to my residence every day to help me pack and move. He told me he had been in prison. Later I found out why. I got to know Mike during this time. I was alone with him on several occasions. He was nothing but respectful, with complete manners. I was abused growing up, so I know what to look for. I felt safe and comfortable with him. He came in, met my partner who was in hospice home care.

Mike was nothing but pleasant and  compassionate. We have kept our friendship current. I believe he has been rehabilitated, he is looking for work, and doing his best to be a member of society.

I trusted him enough to keep items that I didn't have time to sell. He has since sold some items and sent the money to me in a postal money order, in which I have the receipt for. I talk to him by phone frequently.

He sees Dr. Susan Sullivan, and is open about who he is, holds nothing back so he can  overcome his wrongful act.

The biggest challenge for him now, is reentry of society as far as getting a job, and a drivers license.  He is applying at establishments to go to work. He deserves to be a productive member of our community again..

Thank you for your time.

Sincerely,

Laurie Samra

P.S. (Happy to speak to you but prefer to avoid getting too involved if possible).

December 14, 2021

To Whom it may concern;

*I am writing this letter on behalf of Michael Lane.  I met Michael in April of 2021 when he applied for a position with my company for a delivery driver position.  We set a 1st interview date, where Michael was interview by one of my managers who found Michael a good candidate for the position.  When the interview was coming to an end, Michael state the he had to inform us that he was a sexual offender and had spent 10 years in Federal Prison.  At that point my manager contacted me and I spoke with Michael over the phone and told him that I would like to meet with him and discuss his situation.  Upon meeting Michael, he informed me that I could ask him anything that I wanted about his crime and that he would be honest and forthcoming.  I was surprised by how willing and open he was in talking about his past. While speaking with Michael, I voiced my concerns and I also informed Michael that I had to speak with my lawyer about liability, the Sheriff's Office so that I did not put Michael or myself in a position that would not comply with any restrictions that he had.  Michael encouraged me to whatever I needed to.  I did my due diligence and also contacted some references about Michael character and everyone I had contacted had the utmost respect and kind things to say about Michael.*

*I must say that one thing Michael said near the end of our conversation made a very strong statement about the person I believe he is and that he understood the seriousness of his past actions.  Michael told me that if any of my employees had any reservation about his working in my company that I should not hire him.  His concern and respect for others and my business again showed me that he was someone that I wanted to work for me.*

*Michael had two job offers at this time.  He decided that at this time the other job offer might be a better option.  I also told Michael that he always has a job in the future with me if he wanted to come work for me.*

*Michael is very aware of what he is doing and makes sure that he doesn't put himself in any situations that are not good. Just as he always makes sure to take other people's feelings into consideration.*

*Since meeting Michael, the first time, we have kept our relationship and I consider him a friend.  He calls to see how we are doing, stops by just to say hello and checks on our team, he always offers that if I need an extra guy on a weekend or help with anything all I have to do is call him.  Michael is a person that I can say is kind and caring and I am happy that we crossed paths.*

*Respectfully,*

Shawn Thompson



*May 5, 2021*

*Dear Shawn,*

*I'd like to thank you again for the opportunity to interview with your organization.*

*I cannot express the overwhelming respect I have for you as person and potential employer.  The respect, understanding, compassion you showed as I explained my fall from grace and society and kindness you extended to me is something, I have not felt in such a long time.  It speaks volumes of your character and the integrity you have. Your family, friends, employees and customer are truly blessed to have you in their lives in the capacity in which you interact with them as a son, husband, father, brother, friend, employer and business associate.*

*I can honestly say that meeting you was a positive experience in my life.  I will not forget the interaction we had and I will use it as another stepping stone on my journey back into society.*

*I also have to commend Shawn and Cory who I spoke with Friday afternoon while you were out in the field.  Again, the respect, understanding and acceptance they extended to me was amazing.  I view them as highly as I view you.  They are not only great asset to your organization they are extraordinary people.  Please extend my gratitude to them as well.*

*I wish you and your family all the peace, love and happiness this life has to offer you.*

*Sincerely,*

*Michael Lane*

January 8, 2022

Ms. Sandra L. Kautz

Dear Honorable Judge Sullivan,

I am writing this letter for Michael Lane. I have known Michael for over two and a half years. I met Michael, after my daughter met him walking his dog shortly after my husband passed away, 3 months after Michael was released from prison. During this time, we have become the best of friends. Michael and my daughter still maintain a friendship although she lives in Pennsylvania.

Michael has done work for me in my home, remodeling two bathroom and other projects. We spent several weeks together during this time. He would offer his advice and knowledge, his dedication to detail and workmanship were of the highest standards, actually higher than other professional who did some work for me.

I am also making a statement of his character. I cannot express the amount of support that I have for Michael. Michael was forward and honest about his conviction and the time he spent in prison. Michael has also been respectful toward me and anyone that I have seen him interact with. He is caring and compassionate and at no time have I ever felt uncomfortable in his presence. My daughter has had some medicals issues and he has always called her and offered his support to her whenever she was in the hospital. Michael has also insisted to being present when I have had strangers come to my home for various services.

I believe that Michael has transitioned well from prison back into society very well. He is well liked and has several friends, all of which know about his past, in our neighborhood. He is always conscience of his surrounding and avoid any situation that may be questionable with his restrictions.

I also believe that everyone makes mistakes in their life, Michael has taken responsibility for his mistakes, he has completed his punishment and is proactive in making himself a better person and part of society again. I can only hope that you will give Michael a chance to live as normal life as possible and grant this request to end his supervised release early.

Sincerely,

Sandra L. Kautz



January 18, 2022

Good Morning

Ike Lane has been employed by Xtreme since April 2021. He started as a warehouseman, packing jars and boxes and has grown quickly into managing all aspects of our business from ordering supplies and product to receiving, restocking, packing, shipping and even managing other employees. From day one he has been working to make us a success with our USA and international customers.

I have trusted him with money, ordering, and making decisions, even changing practices and have not been disappointed. We are very happy to have him as a part of our small growing company. If you need any additional information, please do not hesitate to call.

Respectfully,

Andrew K. Biro
Owner/Partner



FROM:

TO:

Thurgood Marshall U.S.
Courthouse
Honorable Judge Richard Sullivan
40 Centre Street
(40 Foley Square)
New York, N.Y.
10007